Good morning, your honors. May it please the court. My name is Rochelle Barber. I work for the Office of the Federal Defender, and I'm here for Appellant Sang Soth. The government recommended 113 months in this case. The defense joined the government. The district court sentenced Mr. Soth to 120 months, seven more months than what was recommended by the parties. How many months below the lower level of the guidelines? Wasn't it something like 60 months? 68, your honor. 68 months? Yes. And you're complaining? I am, your honor. Yes. Okay. The government filed two 5K1.1 letters. Did the government do what you bargained for it to do? Did it perform? It did. You have no complaint about what the government did? We are not complaining about the government's recommendation. Did you seek an 11C plea? Your honor, I was not the trial attorney. You know what an 11C is? Of course, your honor. So whoever represented your client below did not ask for an 11C, which would have bound the district court if it accepted the plea? Your honor, we did not enter into an 11C1C plea. I cannot speak to what trial counsel did. It's not very common in our district to get them, especially with a 5K. And the record in this case indicates that the 5K, the cooperation was continuing and actually resulted in a lower recommendation than what the government had originally recommended. So I don't believe they could have bound the government to that in the plea agreement. So where are we? So we are asking this court to vacate the sentence and remand to the district court for resentencing. On the grounds that? That the district court erred in imposing a 120-month sentence. When you say, is it error or abuse of discretion? Your honor, the standard of review is abuse of discretion. So you want us to review the district court's discretion in deciding how far to depart, right? That's part of it, your honor, but there were also procedural errors, including that the district court cited several factors which really do not provide a basis for the 120-month sentence. Before you get there, I may be the only one on this panel that has a problem with it, but I have a problem with the appealability of the district court's exercise of its power to depart. In other words, your complaint, you said, is Judge Garcia didn't depart as far as you wanted to. First of all, we have pre-Booker cases that say that's not reviewable, right? Yes, your honor. We don't have any case post-Booker strictly on point on whether that's a reviewable decision or not. And you haven't cited any, have you? Well, your honor, I did cite Dahlman and Plouffe, both of which say that the review under Booker is for substantive reasonableness. But you're not asking us to review for substantive reasonableness. You're asking us to review for an abuse of discretion and refusal to depart. I am asking that you review for substantive reasonableness, because that's a standard under 3553 and the standard of review. So you don't expect us to review specifically whether or not the district court abused its discretion in departing only 70 months? I'm asking that the court review the ultimate sentence in this case, the 120-month sentence. So you're only seeking a 50, a reasonableness review of the ultimate sentence. Is that right? Not only, your honor. I also allege procedural error because of the factors that the court cited. For example, the court cited, stated to Mr. Soto Procedural error, though, in what? In making the 3553 determination? In basing its sentence on facts that were not supported by the record. For example, its statement to Mr. Soto, you'll just reenter. That's why you're a threat. Mr. Soto stated, I'm not a threat to this community. I'm not a threat to the public. I'm going to be deported after I'm done with my sentence. And before sentencing him, the judge told him, oh, no, in my experience, you'll come back. That was not supported by the record. Did he have an immigration enforcement history? Yes, your honor. He's from Cambodia. He had an ICE hold. He was going to be deported to Cambodia. He is going to be deported. Did he have a prior immigration history? No. He came to the United States with his family. He received a green card and he lost that because of his priors. He has not been deported and reentered, if that's what the court's asking. There was no support for that, for the district court to tell him that. There's no support for the district court to base the ultimate sentence on that. As well as the district court completely undervalued his substantial assistance. This court discussed that. By seven months? Yes. Yes. Well, is it undervaluing the essence of exercising discretion? I'm sorry, I don't understand, your honor. Well, there is no objective measure of, you know, value there. You said the district court undervalued that. Under 5K1.1, the district court had to give substantial deference to the government's assessment of Mr. Soth's cooperation. It did not. And this court discussed that in Rassam. How do you know that it did not? Just because it came to a different conclusion? In part, your honor, yes. In other words, if your theory is correct, then every time a district court sentences at less than the government recommendation, it's an abuse of discretion. That can't be true, can it? No, your honor, but here we also have the district court telling the government that, frankly, it seemed to doubt the government's representations on the 5K because it alleged some kind of collusion between the parties where the government would recommend a certain sentence and the defense would withdraw its arguments on a variance. That's an improper basis for punishing Mr. Soth more harshly. There was no reason to think that the government was not telling the truth in the 5K. There was no factual basis to question the 5K1.1. In fact, the government supported the 5K1.1 on the record. Yet the district court failed to honor the government's recommendation and actually did not give substantial deference to that recommendation. If we were to agree with you and vacate and remand, could the district court, assuming it cited to appropriate considerations, give your client a greater sentence than he already has? Your honor, are you asking could the district court do that? Yeah. If it cited the appropriate standard and 3553 factors. Have you advised your client that there's that risk? Yes. He knows that he could get more time. Yes. Your client had an extensive criminal history, didn't he? Your honor, he did. Okay. And couldn't that have been reason why the judge imposed the sentence that he did? It could, your honor. But in this case, my client had a calculated criminal history under the guidelines of a 4, was already being treated as a criminal history 6 by application of the career offender provision. His guideline sentence had already been increased in light of that. But everything . . . I mean, I understand that, but you had a cooperation agreement for substantial assistance. This opens it up completely for the district court to impose a sentence in evaluating the substantial assistance plus evaluating the whole picture of the defendant. So I'm just trying to figure out the best basis that you have that this was substantively unreasonable. What's your best argument for that? Your honor, there were numerous points of error that we raised. And part of it is we don't know why the court went up 7 months more than what the government and the defense recommended. It cited things that were . . . But that happens all the time. I mean, there's agreements made of this nature when there's substantial assistance. And the judge doesn't . . . it's not bound. It's not 11C1C. The judge is not bound. I think you inform your client at the beginning that the judge is not bound by it. The judge tells them at the time of the entry of the plea that he's not bound by it. And that he gets to evaluate the substantial assistance and make his own determination. Plus, he also gets to look at everything with respect to that defendant's criminal history and social background. And, well, everything regarding that individual that's in the pre-sentence report and that the parties raised. So I'm just . . . I know that you may be disappointed with the sentence because it wasn't what you contemplated. But I'm not . . . I can't figure out what's your best basis is here. Your Honor, this sentencing was infected with error. And we can't separate out one of the bases that the court cited from others. If the court gave him seven extra months because of an unsupported belief that he would reenter after deportation, that's wrong. But he didn't say that. He never said that. Can you point in the record where the district court said, the reason I am imposing a sentence seven months more than what you all have agreed to is because of your prior . . . or your immigration history? Not in so many words, Your Honor. Well, not in any words. He did make a comment about that. He made a comment about other things. But he never made that comment, did he? Not in so many words, Your Honor. Okay. So where else? I mean, where's the other error? Stating that the Bardis had come to the court through some kind of collusion that undermined his view of the 5K1.1 when there was no basis for that at all in the record. But he accepted it. He accepted the motion. He didn't accept the recommendation. Well . . . But he accepted the motion, and he made a determination, and it was seven months different than what you . . . your best case scenario. Yes. Okay. Thank you, Your Honors. Thank you. Good morning, Your Honors. Good morning. I'm Todd Laris. I'm an assistant United States attorney in the Eastern District of California, and I was counsel for the government in the district court in this case. You're an AUSA. I am, Your Honor. Would the record reflect that? It says DOJ. He's not DOJ. He's the Eastern District of California. That's correct, Your Honor. Thank you. Go ahead. I'll start out . . . Well, there's a former U.S. attorney speaking there. I'll start out on the initial issue that was raised in the briefing regarding review of the downward departure. And, as I noted, the court talking about just a few moments ago, there is existing pre-Booker authority regarding non-reviewability of departures that . . . the extent of a downward departure. Is it your position we don't have jurisdiction here? Our position regarding this particular issue is that the statute and existing case law would suggest that there is no jurisdiction to review this particular situation. What did you say in your brief about jurisdiction? I raised this issue first and said that there was no jurisdiction to review this based on the pre-Booker law and cited those cases and string of cases. But we're post-Bookers, so you don't think that the jurisprudence after Booker and especially after Plouffe is clear that we can review for reasonableness any sentence? The court hasn't directly addressed this issue at this point yet, but certainly the trend appears to be that the court is reviewing sentences on reasonableness grounds. But a review for reasonableness is different than a review for whether or not the district court abused its discretion in failing to grant a downward departure all the way down to where the parties agreed. That's a different question, isn't it? And that's why the government raised the issue at the outset, because that issue has not been resolved by the court, and that is the question. Obviously, whenever there's a variance in either direction or a departure in either direction, the party requesting it may complain that it didn't go far enough in the direction that favors it. And the pre-Booker law that addressed that particular issue said that was a non-reviewable situation. That's where the guidelines were mandatory, right? That's correct. Do you have any post-Booker authority to that point? I was not able to find any post-Booker authority. Well, there's post-Booker authority from other circuits that say Booker didn't change, you know, that limitation on a pillow review. Booker itself left open this particular issue. And so that's why, in a sense, as far as this circuit is concerned, it hasn't addressed that issue. And so the government raised it at the outset. The trend, as I've indicated, is and does appear to be towards review of sentences. But in the case that was cited by Mr. Soth in his 28J letter, Rassam, the indication is still that if there were review, it would be under a deferential abuse of discretion standard, and that the court would still consider the totality of the circumstances involved in the sentencing, and the appellate court would not inject a different outcome on rare cases, and only in a circumstance where what occurred was shocking or substantially out of line. And what occurred here is there is a downward variance of a significant amount of time, 68 months. And the court did indicate in the record that it was crediting both of the letters that the government had provided in support of its downward departure motion. I don't know that it makes a difference, but I do want to make sure I'm clear. Was it granted the downward departure? Did he also grant a variance? He did not grant a variance. Okay, so it was a departure. That's correct. He granted the government's 5K1.1 motion for downward departure. Initially, as the record indicates, and the court has the letters that were submitted, the government had made a recommendation of 141 months. And then the second supplemental letter sets out and indicates the reasons why it came back and made a different second recommendation based on new developments, and also discussions with defense counsel who had done an able job and complained that the government had undervalued some of the earlier assistance and wanted to give an opportunity to the government to continue to work the case and continue to work on the substantial assistance aspect of the case. That is, in fact, what occurred. And on the record itself, what occurred when we came in for sentencing was that the court said, I am going to credit both of the letters that the government has submitted, but I'm not prepared to go all the way to where the parties want to go. But he did go a significant amount of the way toward what the government said in its supplemental 5K letter, and that's an appropriate thing for the court to have done. We put in the plea agreement express language that indicates that the ultimate decision about whatever the downward departure is going to be is in the hands of the district court. And the district court here reviewed the record, disagreed with the assessment of the sentence the government and the defense urged, and exercised its own independent judgment in this case, and instead imposed the sentence it did. But it is clear from the record that the court did give consideration to both letters. It did not end up imposing a sentence consistent with the first letter that was submitted, but one that struck a balance between the two letters, which shows it gave thoughtful consideration to what the government had said in both letters and to what the parties were telling the court at the hearing. The other aspect about . . . Can I stop you just for a second there? Yes. At sentencing, did you say anything to the district judge about his failure to give the additional seven months? Did I say anything? I urged the court, based on the information in the supplemental letter, to go to where the government was requesting. Recommended? Yes. And I also tried to clarify on the record that the court had never used the word collusion. What it indicated was it thought the parties had made a deal. But they did. In a sense, they did. And it's interesting. I'm not trying to be inconsistent with what I said. There was not necessarily a deal, quid pro quo, we expect the court to do this. I think any time the parties discuss what a joint recommendation of sentence is going to be, they're going to face the prospect of what occurred here, which is the district court retains the authority to say, sorry folks, but you are wrong, and I'm going to exercise my own independent discretion and come to a different sentencing conclusion. Did you say to the district judge, in so many words, you're honored by not going down another seven months in this individual case? You may be impairing my office's ability to negotiate with defendants in future cases. I did not expressly make that point. That is a point that's well taken, but that's not in the record, and I did not make that point. No, but don't you think we can also assume . . . I mean, Judge Garcia has been doing this for a long time, and I'm sure he's looked at many of these deals, and I don't have any doubt that he's well aware of that factor, right? I would agree with the court that Judge Garcia had been a district court judge for a substantial period of time and recognized that . . . What's at issue here is the government did urge the court to follow the recommendation and did address the various objections to going all the way the court suggested on the record by trying to inform the court of the reasons for the recommendation and alleviate the court's concerns. So from that perspective, the government attempted to maintain its credibility regarding what its 5K departure request would be, and as I indicated earlier, even here, that was the government's recommendation. The government made the recommendation, did so in good faith, stands by it, but recognizes that the court is always in the position to say, I'm not agreeing with your assessment of what occurred here. The other issue that was raised in the briefing regarding the alleged reasonableness of the sentence had to do with a comment regarding Mr. Soth returning to the country following deportation, and I noted that occurred after the court had heard allocution and indicated what it intended to do regarding sentencing and doesn't appear to have been a factor that the court considered in imposing the sentence it selected. The way the procedure occurred based on the record was the court methodically proceeded and evaluated that the guideline calculations in the PSR were appropriate and then considered the downward departure motion, then listened to arguments and leniency and rejected them and imposed a sentence it indicated that it would. So on that basis, it appears it was procedurally and substantively reasonable. Thank you. Thank you. I'll give you one minute. Thank you, Honor. On the jurisdictional issue, this court endowment and ploof indicated it has two bases for jurisdiction, over substantive reasonableness under Booker, and the government didn't cite those cases. I'm not sure how the government's distinguishing those cases, but both those cases and every other circuit that has looked at that issue have found circuit courts to have jurisdiction over substantive reasonableness of sentences, and that's true whether they're within guidelines, below guidelines, above guidelines. Even in Booker, Justice Breyer noted that courts of appeal would continue to have jurisdiction over substantive reasonableness. So, Your Honors, I didn't get a chance to really talk about that in my original presentation, but I want to discuss that. And the fact that you're adding that there was procedural, I guess, error, does that matter? Does that affect this? Well, yes, Your Honor, because application of the guidelines has its own basis for appellate jurisdiction. So to the extent that the court, for example, under 5K, did not grant deference to the government's recommendation, that's an application of the guidelines. That has its own basis for jurisdiction. Thank you. Thank you, Your Honors. Thank you. The case is submitted. Thank you both for your argument today. The next case is United States of America v. Terrell Malone.
judges: Hawkins, Tashima, Murguia